IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MICHAEL W. PLATT, | § | |
|     Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL NO. 4:21-CV-1241-O |
| | § | |
| CARTERET COUNTY DEPARTMENT | § | |
| OF HUMAN SERVICES, et al., | § | |
|     Defendants. | § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION REGARDING PLAINTIFF'S
MOTION FOR DEFAULT JUDGEMENT AGAINST NJIDEKA N. WHITE,
PLAINTIFF'S MOTION FOR LEAVE, AND DEFENDANT NJIDEKA N. WHITE'S
MOTION TO DISMISS

Pending before the Court are three documents: (1) Plaintiff Michael W. Platt ("Platt")'s
Motion for Default Judgment against Njideka N. White [doc. 31], filed April 18, 2022; (2)
Plaintiff's Motion for Leave [doc. 32], filed April 25, 2022; and (3) Defendant Njideka White
("White")'s Motion to Dismiss and Response in Opposition to Plaintiff's Motion for Default
Judgment [doc. 33], filed April 26, 2022. The Court, having carefully considered the motions, the
parties' submissions, and all relevant applicable law, recommends that Plaintiff's Motion for
Default Judgment against Njideka N. White [doc. 31] be **DENIED**, Plaintiff's Motion for Leave
(regarding damages associated with Default Judgment) [doc. 32] be **DENIED AS MOOT**, and
Defendant Njideka N. White's Motion to Dismiss be **GRANTED**.

## I.    BACKGROUND

Platt filed his Original Complaint on November 10, 2021 [doc. 1]. On February 16, 2022,
Platt filed his proof of service for White and the other Defendants. The proof of service indicates
that a copy of the summons and complaint was delivered via certified mail to White at the address

of Carteret County Department of Human Services ("CCDHS") in Beaufort, North Carolina.[1]  On January 10, 2022, Platt filed his Amended Complaint [doc. 11], naming White as one of several Defendants.  The Court issued an Order Regarding Failure to File Proof of Service [doc. 20] on February 15, 2022, instructing Platt to file, no later than March 1, 2022, either proof of proper service as required by Rule 4.1 of the Local Civil Rules of the Northern District of Texas or an instrument in affidavit form establishing why such proof cannot be filed.

On April 11, 2022, the Court issued its Notice of Intention to Dismiss without Prejudice [doc. 30], ordering that Platt, should he desire to pursue his claims against White, file a Request for Clerk's Entry of Default and a Motion for Default Judgment no later than April 25, 2022, or his claim against White would be dismissed.  On April 18, 2022, Platt filed his Motion for Default Judgment against White [doc. 31].  On April 25, 2022, Platt filed his Motion for Leave (regarding damages associated with Default Judgment) [doc. 32], requesting permission from the Court to file "further documentation regarding damages attributable to [] White."  (Plaintiff's Motion for Leave ("Pl.'s Mot. for Leave") at 1.)   White filed her Motion to Dismiss and Response in Opposition to Plaintiff's Motion for Default Judgment [doc. 33] on April 26, 2022.

In his Motion for Default Judgment, Platt states that "[a]s indicated by the proof of service filed on February 16, 2022, Defendant Njideka N. White was served on November 26, 2021, sixteen days after the filing of Plaintiff's Original Complaint" and that "[a]s of the date of this filing, [] White has failed to file any answer or enter any appearance in this matter and thus is in default."  (Pl.'s Mot. for Default at 1 (internal citations omitted).)  Platt requests that the Court enter an Order of Default against White and, *inter alia*, "enjoin her from refusing to withdraw the findings that Plaintiff abused his son."  (*Id.* at 2.)

---

[1] The proof of service document was completed by Legal Eagle, Inc. and the form's box that states, "I personally served the summons on the individual at (*place*)" was checked.

In her Motion to Dismiss and Response in Opposition to Plaintiff's Motion for Default Judgment, White asserts several bases for dismissal and asserts that default should not be entered against her.[2]   As to the alleged improper service, White argues that "Plaintiff did not properly serve [her] with the Original Complaint," because "Plaintiff sent the Original Summons and Complaint to the CCDHS alone."   (Defendant White's Motion to Dismiss and Response in Opposition to Plaintiff's Motion for Default Judgment ("Def.'s Mot. to Dismiss") at 3.)   White states she "was no longer an employee or associated with the CCDHS at the time the summons was sent to the CCDHS," and that she "left her job with the CCDHS as of April 2021, and [,] consequently[,] did not receive it or have notice of the Complaint." *Id.* at 3-4.

Also, in her Motion, White asserts Platt's action against her should be dismissed because the Court lacks personal jurisdiction over her.   In support, White argues that she is a "North Carolina resident who has never set foot in Texas, has not conducted business in Texas, and has not otherwise voluntarily reached into this forum." *Id.* at 4.

## II.   LEGAL STANDARD

A Rule 12(b)(5) motion "challenges the mode of delivery or lack of delivery of the summons and complaint." *Byrd v. Comfort Inn-Tupelo, Miss.*, No. 1:18-CV-00036-GHD-RP, 2018 WL 2306891, at *1 (N.D. Miss. May 21, 2018).   The motion's trajectory "turns on the legal sufficiency of the service of process." *Id.*, citing *Holly v. Metro Transit Auth.*, 213 Fed.Appx. 343, 344 (5thh Cir. 2007).   Ultimately, when a challenge regarding service is presented to the court, the party making service bears the burden to demonstrate that the service was valid. *Carimi v. Royal Caribbean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992).

---

[2] White also states dismissal is proper under the *Rooker-Feldman* doctrine, improper venue and failure to exhaust administrative remedies.

3

Rule 12(b)(6) allows motions to dismiss for failure to state claims upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Courts are limited under 12(b)(6) to the four-corners of the texts; they may not look beyond the face of the pleadings. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992). Additionally, the district court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *First City Bank*, 970 F.2d at 47. "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of facts is improbable and that 'recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see also Conley v. Gibson*, 355 U.S. 41, 45 (1957) ("[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts."). Nonetheless, a plaintiff must provide the court in its pleadings with "more than labels and conclusions," as "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. When a pleading has "not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## III.   DISCUSSION

### A. Default Judgment

A threshold issue before the Court is whether Platt's service on White was proper, and, thus, whether Platt is entitled to a Default Judgment against White. Federal Rule of Civil Procedure 4(m) requires that a summons and copy of the complaint must be served on each Defendant within 90 days after the complaint is filed. FED. R. CIV. P. 4(m). An individual within a judicial district of the United States may be served by, *inter alia*, "following state law for serving a summons in an action brought . . . in the state where the district court is located *or* where service is made." Fed. R. Civ. P. 4(e)(1) (emphasis added).

4

The district court in which this action resides is located in Texas. Regarding service of process, Texas state law provides the following methods for proper service: "(1) delivering to the defendant, in person, a copy of the citation, showing the delivery date, and of the petition; or (2) mailing to the defendant by registered or certified mail, return receipt requested, a copy of the citation and of the petition." Tex. R. Civ. P. 106(a)(1)-(2). Additionally, "[t]he officer or authorized person executing the citation must complete a return of service" and "[w]hen the citation was served by registered or certified mail as authorized by Rule 106, the return by the officer or authorized person must also contain the return receipt with the addressee's signature." TEX. R. CIV. P. 107(a),(c). Notably, "[a] number of Texas cases have held that Rule 107 requires a showing of the connection between the person signing for the process and the actual addressee." *Asset Prot. & Sec. Serv.'s, L.P. v. Armijo*, 570 S.W.3d 377, 383 (Tex. App. 2019) citing *Reed Elsevier, Inc. v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 180 S.W.3d 903, 905 (Tex. App. 2005, pet. denied)

Further interpreting Rule 107, Texas Courts have held that "[i]f the individual who signs the receipt of delivery is not the addressee or an agent otherwise capable of receiving service, service of process is invalid." *Asset Prot. & Sec. Serv.'s*, 570 S.W.3d at 384, citing *Master Cap. Sol.'s Corp. v. Araujo*, 456 S.W.3d 636, 639-40 (Tex. App. 2015, no pet.) (Because there was no showing in the record that the person who signed for the certified mailing was authorized to do so, the face of the record failed to show strict compliance with the rules); *see also Southwestern Sec. Serv.'s, Inc. v. Gamboa*, 172 S.W.3d 90, 92-93 (Tex. App. 2005, no pet.) ("If the return receipt is not signed by the addressee, the service of process is defective.")

There are no presumptions of valid service of process and, "[m]oreover, failure to affirmatively show strict compliance with the Rules of Civil Procedure renders the attempted service of process invalid and of no effect." *Armendariz v. Barragan*, 143 S.W.3d 853, at 855

5

(Tex. App. 2004) citing *Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885

(Tex. 1985). "For well over a century, [the Texas Supreme Court] has required that strict

compliance with the rules of service of citation affirmatively appear on the record in order for a

default judgment to withstand direct attack." *Aremndariz*, 143 S.W.3d at 855 citing *Primate*

*Const., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994). The Texas Supreme Court has further

stated:

> As we explained in *Dunn,* we rigidly enforce rules governing service when
> a default judgment is rendered because the only ground supporting the judgment is
> that the defendant has failed to respond to the action in conformity with applicable
> procedure for doing so. If the defendant can then show that the person commencing
> the action was guilty of comparable nonconformity with procedural rules, under a
> principle of equality the derelictions offset each other and the merits of the
> controversy may be brought forward for consideration.

*Aremndariz*, 143 S.W.3d at 855, quoting *Hubicki v. Festina*, 226 S.W.3d 405, 408 (Tex. 2007),

*quoting* Wilson v. *Dunn*, 800 S.W.2d 833, 837 (Tex. 1990) and Restatement (Second) of

Judgments § 3 (1982).

In the instant case, Platt's service on White was clearly defective. Absent personal delivery

of the summons and complaint to White, Platt was obligated to serve White in the manner

prescribed by the law of the state in which the action was filed—Texas. Operating pursuant to

Texas' Rule 106, it was proper for Platt to serve White via certified mail. Platt's actions, however,

stopped short of fully effectuating service pursuant to Rule 107 because Platt failed to provide

proof to the Court of a completed a return of service. As stated above, in the proof of service Platt

filed with the Court, a copy of the summons and complaint was merely delivered, via certified

mail, to the P.O. Box address for CCDHS. The record is void of *any* return of service, let alone a

return that would confirm White, the addressee, had actually received the documents. Because the

face of the record fails to show strict compliance with Texas' Rules of Civil Procedure, this Court

finds Plaintiff's service of process on White was invalid and of no effect. Accordingly, the Court

recommends that Plaintiff's Motion for Default Judgment against Njideka N. White [doc. 31] be **DENIED**, that Plaintiff's Motion for Leave [doc. 32] be **DENIED AS MOOT**, and that Defendant Njideka N. White's Motion to Dismiss be **GRANTED** and that all claims against her be **DISMISSED**.

## B. Personal Jurisdiction

Though the Court has found that Platt's service on White was invalid and, thus, of no effect, the Court will also address White's alternative argument that all claims against her should be dismissed for lack of personal jurisdiction. "Personal jurisdiction over a non-resident defendant in a federal question case is determined by reference to the law of the state in which the court sits, unless otherwise provided by federal law." *Gardner v. Clark*, 101 F. Supp. 2d 468, 474 (N.D. Miss. 2000); *see McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Texas courts have interpreted the Texas long-arm statute as "extending to the limits of due process." *Bullion v. Gillespie,* 895 F.2d 213, 215 (5th Cir. 1990). Accordingly, to determine whether it may assert jurisdiction under the Texas long-arm statute, a federal court must determine whether jurisdiction comports with federal constitutional guarantees of due process as set forth in the Fourteenth Amendment. *See McFadin*, 587 F.3d at 759; *Bullion*, 895 F.2d at 216.

The party seeking to invoke federal jurisdiction bears the burden of establishing the requisite minimum contacts. *WNS, Inc. v. Farrow,* 884 F.2d 200, 203 (5th Cir. 1989); *Walker v. Williamson*, 131 F. Supp. 3d 580, 590 (S.D. Miss. 2015). Further, "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.,* 754 F.2d 542, 546 (5th Cir. 1985); *see Walker*, 131 F. Supp. 3d at 590.

7

To establish personal jurisdiction over a defendant, that party must have "purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state" and the exercise of jurisdiction over the defendant must not offend the "'traditional notions of fair play and substantive justice.'" *Tayama v. RIOM Corp.*, No. 2:11-CV-167-J, 2012 WL 556007, at *3 (N.D. Tex. Feb. 21, 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)). Minimum contacts with a state are established through specific or general jurisdiction. *See Tayama* 2012 WL 556007 at *3.

"General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002) (quoting *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir.1999)). "The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)). To confer general jurisdiction, a defendant must have a sufficient business presence in the forum state. *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999).

Specific jurisdiction exists when Defendant's contacts with the forum "'arise from, or are directly related to, the cause of action.'" *Revell*, 317 F.3d at 470 (quoting *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001)). The Fifth Circuit has established a three-step analysis for determining whether specific jurisdiction exists: (1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). "The minimum contacts review is fact-intensive and no single

contact is decisive; the touchstone is whether the defendant's conduct shows that it reasonably anticipates being haled into court in the forum." *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 675 (S.D. Tex. 2014) (internal quotations omitted).

"The defendant must not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or the unilateral activity of another party or third party." *Evergreen Media Holdings, LLC*, 68 F. Supp. 3d at 675. "The touchstone of the personal-jurisdiction analysis is whether the defendant 'should reasonably anticipate being haled into court' in the forum, given its relevant conduct." *Viahart, LLC*, 2020 WL 4905542, at*2 (quoting *Burger King*, 471 U.S. at 474). "But foreseeability is not the ultimate concern and is constrained by the above framework and by the principle that jurisdiction is primarily a question of authority rather than fairness. *Viahart, LLC*, 2020 WL 4905542, at *2. "Thus, jurisdiction may rest only on the defendant's purposeful contacts that manifest its intention to submit to jurisdiction." *Id.*

If Plaintiff successfully establishes the first two steps for showing the court has specific jurisdiction over Defendant, "the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Sarkar v. Petroleum Co. of Trinidad & Tobago Ltd.*, No. H-15-2372, 2016 WL 3568114, at *14 (S.D. Tex. June 23, 2016). "In evaluating whether the exercise of personal jurisdiction over the defendants would be unfair, courts examine a number of factors, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies." *DLR, LLC v. Montoya*, 465 F. Supp. 3d 676, 681 (N.D. Tex. 2020).

As Platt bears the burden to establish White has the requisite minimum contacts with the forum state—Texas—the Court will first address the facts provided in his pleadings. In his First Amended Complaint, Platt states that his wife reported to CCDHS, an agency located in North

9

Carolina that employed White as a "social worker in investigations and assessment in the area of child protective services," that Platt allegedly abused their minor son, SDP, in Texas. (Pl.'s First Am. Compl. at 1-2.) Platt alleges that White was assigned to investigate the alleged abuse. *Id.* at 3. Platt notes that "CCDHS [has a] policy that any reports of out-of-state child abuse by a resident of a state other than North Carolina [] be referred to the state in which the alleged abuse occurred," but states that the White "declined to refer it to the applicable authorities in Texas." *Id.* Regarding White's investigation, Platt states the following:

> Ms. White's 'investigation' effectively consisted of nothing more than a wholesale adoption and endorsement of the allegations brought against Michael Platt without any meaningful evaluation of any input from Mr. Platt himself or even any contact of any kind with witnesses he put forward as having knowledge of relevant information.
>
> . . . .
>
> Ms. White reached out to Michael Platt in an effort to intimidate him into signing a 'Temporary Parental Safety Agreement,' despite having done nothing to gather evidence from Mr. Platt in an effort to test the validity of the reported allegations.

(Pl.'s First Am. Compl. at 3, 8.) CCDHS subsequently issued its "findings" on the alleged abuse, which Platt characterizes as "entirely false and in no way substantiated," in November 2020. *Id.* After the issuance, "[t]hrough counsel, [] Platt informed CCDHS and Ms. White of his son's disabilities and their problematic impact on the proceedings." *Id.* Platt argues that CCDHS and White "have [wrongfully] continued to keep their own 'findings' [of child abuse] in place." *Id.* at 4.

As stated above, the "minimum contacts" prong of personal jurisdiction may be further divided into contacts that give rise to either "general" or "specific" jurisdiction. With respect to general jurisdiction, the record is clear that White's contacts with Texas *are* solely related to Platt's cause of action and, thus, general jurisdiction is not applicable. *See* (Def.'s Br. at 6-7.) As to specific jurisdiction, as set forth above, the first two elements of a *prima-facie* case require Plaintiff

10

to show: (1) Defendant has minimum contacts with Texas in that Defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there and (2) Plaintiff's cause of action arises out of or results from Defendant's forum-related contacts. *See Seiferth*, 472 F.3d at 271. Thus, the core jurisdictional issue is whether White's investigation of a child abuse allegation in Texas satisfies the requirements that she purposefully directed her activities towards Texas and that Platt's claims arise out of or are related to White's contacts with Texas. *See Bristol-Myers Squibb Co. v. Superior Ct. of Calif., San Francisco Cty*, 137 S. Ct. 1773, 1781 (2017) ("In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State.'")

After viewing Platt's assertions and the submitted evidence in the light most favorable to Platt, the Court is not convinced that White's contacts with Texas are enough to give this Court specific personal jurisdiction over her. As stated above, Platt submits evidence that shows White's employer, CCDHS, a North Carolina state agency, assigned her to investigate the alleged child abuse that occurred in Texas, and, at some point during her investigation, she made a referral to Texas and contacted Platt for an interview. *See*, discussion, *supra*. Platt cites to *no* other evidence of White purposefully directing her activities or having contacts with Texas. Further, Courts have held recognized that a "plaintiff cannot base personal jurisdiction over a nonresident defendant on communications to law-enforcement [regarding matters] in the forum state." *James v. Woods*, No. No. 14-216, 2014 WL 3497712, at * 4 (E.D. La. July 14, 2014), citing *Claro v. Mason*, No. H-06-2398, 2007 WL 654609, at * (S.D. Tex. Feb. 27, 2007) (citing *Lott v. Burning Tree Club, Inc.*, 516 F.Supp. 913, 917 (D.D.C. 1980)). "The minimum-contacts analysis properly focuses 'solely on the actions and reasonable expectations of the defendant.'" *Claro*, 2007 WL 654609, at *7, citing

*Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 780 (Tex. 2005) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 481,82 (1985)).

The Court finds that White's investigation and brief contact with Platt—a Texas resident—was not a voluntary, purposeful act by which she availed herself of the benefits and privileges of Texas law. Moreover, even if White's investigation *could* somehow be construed as purposeful availment to Texas, White could not have reasonably anticipated begin haled into a Texas court to defend a civil suit arising out of her conduct. Consequently, the Court concludes that it lacks personal jurisdiction over White. Accordingly, the Court also recommends that White's Motion to Dismiss [doc. 33] be **GRANTED** on the basis of no personal jurisdiction and that all claims against her be **DISMISSED**.[3]

## IV.    CONCLUSION

The Court recommends that Plaintiff's Motion for Default Judgment against Njideka N. White [doc. 31] be **DENIED**, that Plaintiff's Motion for Leave [doc. 32] be **DENIED AS MOOT**, and that Defendant Njideka N. White's Motion to Dismiss [doc. 33] be **GRANTED** and that all claims against her be **DISMISSED**.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de*

---

[3] Based on the foregoing recommendation of dismissal, the Court declines to analyze White's arguments for dismissal pursuant to improper venue and failure to exhaust administrative remedies. Likewise, the Court finds that the *Rooker-Feldman* doctrine is inapplicable to this case, as the ruling in question is from a state agency and is not a state-court judgment. *See, Ill. Cent. R. Co. v. Guy*, 682 F.2d 381, 390 (5th Cir. 2012). ("The *Rooker-Feldman* doctrine does not apply to this case because adjudicating [plaintiff's] claims did not require the district court to review any final judgment rendered by a state court.") As such, the Court will not address Defendant's argument.

*novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections to 14 days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **August 29, 2022** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED August *15*, 2022.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/adh

13